Good morning. May it please the court, my name is Colby Williams. I represent the plaintiff appellants from the case below. For convenience, I may refer to them as the news organizations because I represent six entities collectively. I'd like to reserve two minutes, if I may, and I'll watch the clock. We are here today to ask this court to reverse the decision of the district court denying attorney's fees to our clients in a 1983 civil rights action. Again, we've outlined a number of reasons why we believe that should be this court's action in the brief, but I'd like to focus on two of them, if I may, in this argument. The first point I'd like to make is that there were no special circumstances that rendered the award of an attorney's fees unjust in the case below. It is very well settled that the prevailing party in a 1983 civil rights case is normally entitled to their attorney's fees, absent special circumstances. The district court below, in a one-sentence opinion, found that special circumstances existed based on what I would suggest is a conclusory reference to this court's affirming opinion in the Thorstead case. We believe that was erroneous. I'd like to start with the two-pronged test this court normally applies when determining whether special circumstances exist. The first prong of that test is whether allowing attorney's fees serves the purpose of the Attorney's Fees Act embodied in Section 1988. The purpose has been defined as two-fold, basically. One, does that award provide incentive to other parties to pursue civil rights violations? And two, does the award of attorney's fees serve the interest of encouraging the government to voluntarily comply with the law? We suggest that both prongs of that first prong were met. The case below — Would it be a permissible — I know the district court said very little, but would it be a permissible basis to consider the relative wealth of these claimants as compared with a typical civil rights claimant? Your Honor, I'm glad you asked that question because that's something that's picked up on quite a bit in the answering brief of the Secretary of State. My answer to that question is no. Wasn't that one of the factors in Mexican-American educators that dealt with costs rather than fees? But isn't that a permissible consideration? Assuming a court were to do that, we don't know whether the court was thinking that here. Right. We don't. Is it permissible? It may be permissible, but I would point the court to the legion of authority that we've cited in our brief, and I can tick them off for you. The Harrington case, which dealt with wealthy landowners in Sonoma County. The Ackerley case, which dealt with a wealthy outdoor broadcaster. Did those cases say it was impermissible to consider it, or did they just do something different? Well, what they said, Your Honor, was that they looked at what the respective district court in those appellate cases had said, and that was a basis that those courts had made for denying fees, and they said that is not a sufficient basis to deny attorneys' fees. Now, again, we don't know whether our district court in this case focused on that exclusively or in combination with the other Thorstead factors. I'll get to that. But I think the precedent in the Ninth Circuit is that irrespective of whether the 1988 Attorney's Fee Act existed is irrelevant with respect to whether a particular plaintiff would have brought that suit anyway just because it can afford to. I think that was made clear also in the Democratic Party v. Reed case. There we weren't talking about wealthy corporations, but we were talking about political parties where the argument was made, listen, they're well-funded. They have the ability to bring this suit regardless of whether they obtain their attorney's fees at the end of the day. You should not award them fees was the argument made by the State of Washington in that case. And this Court rejected it, flat out rejected it, and said that is not a sufficient basis for denying fees. So while is it possible to consider it, perhaps when you get to the Lodestar factor and you're analyzing the reasonable hourly rate and the reasonable number of hours, perhaps then it would factor into the equation, perhaps, but I don't think it's a basis. I don't see how it would have anything to do with the reasonable number of hours. Doesn't that have to do with what the lawyers work rather than the ‑‑ I assume we're doing an awful lot of guessing here. I'm a very simple judge, so I say is there a simple solution. I look at this order and I don't know how to review it. And we've said in CETI, you have to have findings of fact and conclusions of law. I don't think these qualify in my judgment as findings of fact. Why wouldn't we just vacate and remand and ask the district attorney to review it? And then we'll be able to get on into these wonderful complex questions the next time around. Your Honor, I'd like to answer that because I was going to bring this up. I know you sat on two cases, the Cunningham case and the Chalmers case, in which fees were granted. And the underlying ‑‑ or the holding in those cases, one of them anyway, was that when you're granting a fee, you've got to make sufficient findings. You've got to ‑‑ I think the terminology is a clear and concise statement explaining why the fee is being awarded. That's when fees are presumed. When the ordinary presumption that a prevailing party wins, you still have to explain it. I would submit that when the prevailing party is asking for fees and you're going to deny it, you've got to do something even more than a clear and concise statement. You've got to make findings of fact, conclusions of law. But I would say this. Recently in the Mendez opinion, which we supplemented in a Rule 28J letter, this court looked at a district court opinion which had made no findings that special circumstances existed and took it upon itself to review the record which was developed enough to say no special circumstances exist here. Now, we're going to remand it with the instruction that a fee be awarded, but in terms of the reasonableness factors and what goes into the amount that is to be awarded, that needs to be determined at the district court level. But I do think that this court can make the finding that no special circumstances existed before it remands and ask the district court to ‑‑ To follow up on Judge Wallace's question, how could we do that in the first instance? That's not really our job. Presumably the district court may have many good reasons. We just don't necessarily know what they are. Well, I think if ‑‑ with respect to that, Judge Graber, if you give the district court, and perhaps I should say if you give the secretary the benefit of the doubt, that being that the district court adopted every one of its arguments, the secretary's arguments on Thorstead, in other words, it found all seven factors applied here, then I think this court could determine that that's clearly erroneous. Under the abuse of discretion standard, you look at two things. Did the judge apply the correct legal standard, which is reviewed de novo by this court, or also you can look at did it make correct factual findings and were they ‑‑ do they withstand scrutiny under the clearly erroneous standard? I think if you give the secretary the best of it and look at it and say, okay, we'll assume that the judge found all seven applied here, I think based on the arguments in the briefs that you can find that's absolutely clearly erroneous because none of those factors applied here. With the possible exception that the secretary was acting in good faith. So you're asking us to find non‑findings clearly erroneous. Where do we get the authority to do that? Well, Your Honor, our first position is that the judge did not make adequate findings of fact and conclusion law, which hinders this court's ability to conduct review, meaningful review. But I don't think it's ‑‑ Well, it's an assertion, I think. Right. But my point is that there's a difference between hindering review and making it impossible. I think this court could at least review that set of findings under Thorstead and find they don't apply here. I see him at a ‑‑ Yeah, but let me ‑‑ I have a different question. The district court relied on Thorstead, and it's sort of a peculiar procedural situation. We have the Thorstead case, which is a district court case. It was affirmed, and there was a brief reference. Do you think Thorstead controls here? I gather you don't. I do not. I do not. And if we were to make a principal distinction on this case, rejecting Thorstead and adopting our usual rule for the guidance of the district court, if we end up remanding this, on what basis would you suggest or would you argue that we do that? Well, I think Thorstead, the district court opinion of Thorstead is very unique. You don't see it cited a lot presidentially. The affirming opinion is very brief in its affirmance of that. Yes. I think the fallback principle or the principle that's normally employed when you're looking at special circumstances is, number one, did the act achieve the purposes designed by the Civil Rights Attorney's Fee Act? And, two, you balance the equities. And I think under those two prongs that the court normally employs, the case should be reversed, and there should be no finding that special circumstances exist under that posture. Thank you, Counsel. We'll give you a little bit of time. Thank you. I appreciate it. Good morning, Justices, Counsel. My name is Nguyen. I represent the Nevada Secretary of State. Can you draw your microphone a little closer so we can hear you? Sure, of course. There has been a lot of discussion about what findings of facts were made and what conclusions of law were drawn. The district court did not abuse its discretion. It adopted fully all the arguments, all the factual arguments and legal conclusions that were argued in the Secretary of State's opposition. How did it do that? It did. You didn't say adopted. We adopted the position of the government. You said we considered the factors. It's implicit. What the order said is that, well, first, the order was fully briefed. The Secretary filed an opposition, and the media corporations filed their reply. The district court considered it, relied on Thorsted v. Monroe, and found that as argued by the Secretary of State in his opposition, special circumstances exist similar to those found in Thorsted v. Monroe. Well, not identical. So how do we know similar in what way or not similar in what way? Well, Your Honor, I would submit that they're similar based on all the arguments that we made in our opposition. And, again, the order is short and sweet, but it's implicit based on that statement that all of our arguments were adopted and all of our conclusions of laws were made based on those factual arguments. I understand that you wish Judge Proe would say, submit to me proposed findings and conclusions, and we'd have a nice, clean case. But he didn't. And so you've got what you've got. And he says, similar to, I don't see that as a finding in any way that I could determine whether he was right or wrong. I can't make that jump unless you can convince me that that's my duty as an appellate judge to go back to the trial court and make my own findings of fact and conclusions of law. The question is not an easy one, and it's not your fault you have it, but you've got it. So say you're the judge and you write, we don't understand what the district court's saying, he said, similar to this, but we gather from that that what he meant was X. And then I would cite a case after that that shows me that I've got the jurisdiction to do that. Where would I find that case? Where would you find the case that allows the district court to rely on that? That allows me to determine what his findings are. Well, I think Your Honor would have to go back to the standard of review, which is an abuse of discretion standard of review. Was it an abuse of discretion for the district court to make the short statement relying on the arguments made in the opposition? And I submit that it was not an abuse of discretion. What evidence did you put on? Nothing, right? You just submitted a brief. I'm not quarreling with you, but the district judge essentially adopted your brief in the absence of any evidence, right? Well, Your Honor, the opposition was just not filed in a vacuum. It was filed in response to the motion for attorney's fees. And the media corporations had a ---- Let me interrupt you for a second. Now, here on appeal, you spend quite a bit of time on market capitalization. You talk about Time Warner, and you cite the various internets. You talk about the capitalization, $60 billion and so forth. None of that was presented at the district court, was it? That is correct. That was not, but that ---- So, on the other hand, your opponent didn't have the opportunity to say news organizations are losing money, that this talks about the deterrent effect. You just raised that in front of us, and all you said in front of the district court was, they're a major media, therefore they have lots of money. That's all you said, right, in argument. I just read your arguments. That's all you ---- I mean, your brief, and I can cite it to you. All you said was, plaintiffs are anything but indigent or impoverished. Every plaintiff is a major media conglomerate. That's all you said. That is correct. The submission ---- How can the district court base a finding of wealth based on your assertion that they're just a large media conglomerate? Well, the district court did find that they are not indigent plaintiffs. Again, if you look at the secretary of state's ---- It may be a matter of common sense, but then you come to us, and you talk about market capitalization, and you cite a whole bunch of evidence that wasn't in the record before the district court and ask us to affirm the finding. Well ---- How can that be true? I apologize if that was troubling. I believe the submission of the financial revenues were in line with our argument on one of the factors. All right. So let's leave that factor aside. The other major factor is that you said you didn't oppose it, or what were the other major factors you think were important to the district court? The only one you cited or we've talked about today is the fact that these are major corporations. What other factors? That's one of the factors, and I believe it is a significant factor because a fee award to the media corporations would not assure effective access to the judicial system. Again, there are six major news corporations. And the other factor is that the exit polling statute had been in effect in Nevada since 1997. It was declared unconstitutional in 2006. Within that nine-year period, the secretary took no steps to enforce that. All right. Well, how do you square that with the district court's prior finding that, in fact, that the secretary of state was going to enforce it and there was a sufficient threat? That it was? When the district court entered its injunction, it made a specific finding on that and said that the secretary of state was going to enforce it. How, then, can you say that the district court made the finding that the secretary of state wasn't going to enforce it because we have a specific finding in the injunction that the secretary of state was going to enforce it? I believe that statement or that finding was made on the fact that the secretary would not disavow the constitutionality of the statute prior to commencement of the lawsuit. Statutes are presumed constitutional. Now, here's what the district court said. The threat of enforcement must be credible, not imaginary or speculative. Defendant, through its agents, recently advised the plaintiffs that the defendant would prohibit exit polling within a 100-foot zone. Plaintiff's speech indisputably falls within the challenge the statute's reached. Defendant, in effect, is making the plaintiff choose either to self-censor or stay outside the 100-foot zone or to risk being ejected from the 100-foot zone and face possible criminal and civil penalties. Under such circumstances, the court finds that the plaintiffs have a well-founded fear of enforcement and prosecution for conducting exit polling. And it goes on and makes other specific findings that, in fact, the secretary of state was going to enforce it. So my only question to you is how, then, can you ask us to conclude, based on the terse findings of the district court, that the district court had actually concluded the opposite in the fee award, that you weren't going to enforce it? Well, I submit that our statement that we would prohibit, that the secretary would prohibit, is slightly different from actually enforcing it. The secretary of state has no enforcement power. And as evident of that, the district court made a finding on that, too. The secretary of state may make interpretations and take other actions for the general effect of administration governing its best enforcement authority. Nevada law specifically vests enforcement authority over election laws in the secretary of state. I mean, these are the findings of the district court. I'm not making this up. Yes, Your Honor. And that finding also related to our motion to dismiss, which we filed based on we obviously lost on that motion. But our argument there was, again, that it was never enforced. Moreover, the secretary has no enforcement power. He could say in a letter that he will not allow exit polling within 100 feet. But as far as enforcing and commencing an investigation or prosecution, those are different matters. And I think that relates to enforcement. Well, and you have a letter from the secretary of state saying the secretary of state was going to enforce it. The laws were going to be enforced, right? I do not believe the letter says that. The letter says that the secretary would prohibit it. Would prohibit it? Yes. And so how is that different? I'm sorry? How is that different from enforcing? It's different, again, because the secretary has no true enforcement power. He cannot go out there and investigate or commence a prosecution. He can only refer to the AG or the district attorney who independently determines whether to prosecute. And so what the letter says is, this is from the secretary of state, we are deeply concerned about the presence such an allowance would set the possibility of opening up a virtual Pandora's box of similar requests by partisan organizations. Although your intentions may be benign and your claim unobtrusive, the nature of your activities have a chilling effect, goes on to say we must place the weight of this issue in the set of voters and decline to allow exit polling within the 100-foot mark established by our state legislature. Why isn't that an indication you're going to enforce the statute? Your Honor, in reality, it was never enforced. In 2004, the media corporations conducted exit polling in Nevada. It was never enforced. The secretary never sent anyone out there to stop them. He never sent a letter subsequently to complain. He never referred the matter to the district attorneys or the AG for prosecution. Right. And the district court made findings on that, too, saying that the fact that it hadn't been enforced didn't mean it wouldn't be enforced. It was only 10 years old. It would be premature, the district court says, to declare historically it has not been enforced or had fallen into a state of disuse. I don't mean to quarrel with you on this, but all I'm saying is we have these generic, just a generic finding. You've urged that the media defendants are wealthy and they're not entitled. You've urged that, in fact, the statute wasn't enforced. But the district court made specific findings on the second issue. So it's hard for me to see if there's any other justification except that the media defendants, the media plaintiffs are not indigent. And from the deterrence of the order, I don't know how, and I say this because I'm inviting you to respond to it, I don't know how we can import all of your arguments, which included arguments that were a contradiction to the district court finding, and conclude that the district court adopted all of your arguments as its findings. Shouldn't we ask Judge Proulx what he meant? I believe Judge Proulx stated what he meant in his order when he said, as argued by the Secretary of State in his opposition, again, I believe it's implicit that he adopted all the arguments. It was not just those two factors that were special circumstances. What else? As counsel indicated, the Secretary acted in good faith. That's not a fact that was disputed at the trial level or here. The other factor is there would be no deterrent effect. The Secretary of State does not enact laws in Nevada. The legislature does, with or without his consent. He can testify and disagree, but it's not up to him whether they're enacted. Another special circumstance that I believe is important is the Secretary did not take any steps to increase the litigation costs. He filed one motion that was considered substantive, and that was the motion to dismiss. That was filed on a good faith belief that the matter was not right for adjudication, because he had not taken any steps to enforce, and moreover, he had no enforcement power. But all the fees were incurred in opposition to your motion, right? Almost all of them. So how can you say that you didn't do much to cause the defendants or the plaintiffs to incur fees? If they're asking for fees based on their opposition to your motion, isn't it illogical to say that your motion didn't cause them to incur any fees? Your Honor, the circumstances under Dorstad v. Monroe does not say that the Secretary cannot put on any kind of defense. It was a feeble defense, but he had to put on some kind of defense, and it was not a frivolous filing. It was filing based on a good faith belief that the matter was not right for adjudication. It was not frivolous in any way, and I submit that the Secretary should not be punished or that should not count against the Secretary simply because he put on a defense. Within 22 days after his motion to dismiss was denied, he entered into stipulation for a permanent injunction. He, in fact, even drafted the proposed order, and the matter was over within weeks. From the time of the filing of the complaint to the time the order was entered. Doesn't that go to the amount of fees and not the entitlement to fees? Well, it's one of seven factors. It's the totality of all of the factors. I submit that we cannot take each factor and examine them in a vacuum. They're examined as a totality, and that was what the district court took, adopted. We argued all of these factors in our opposition, and it was adopted implicitly in the order. Thank you, counsel. Thank you very much. We have a little time for rebuttal. We'll give you two minutes. Thank you. I think one thing that's clear from the argument that we just heard is that there is a number of internal inconsistencies between the district court's opinion on the merits and its conclusory order on the attorney's cease motion. Your Honor touched on one of them. The district court absolutely found that there was a threat of enforcement. Throughout the lower court proceedings, there was what appeared to be an attempt to equate enforcement with prosecution. I think the district court properly rejected that and said, no, there is a legitimate threat of enforcement. That's why we're here. That's why we brought the suit. Another example of an inconsistency, and these go to the Thorstedt factors. That's why I'm touching on them. Thorstedt found one of the things was that the government from the State of Washington, I believe it was also the Secretary of State there, didn't have the chance to settle. Not true here. And the district court so found. 2004, we wrote a ten-page letter to the Secretary of State that said, number one, this statute can be construed constitutionally based on the legislative history. Number two, if you don't choose to construe it that way and you're going to find that it does prohibit exit polling, there is a wealth of authority, including binding precedent from the Ninth Circuit in the Daily Herald case, that says such an interpretation is unconstitutional. And three, we said, if we're forced to litigate this, we're going to seek our attorney's fees. But we don't want to do that. And by the way, we were never asking the Secretary to stipulate that the entire statutory scheme was unconstitutional. All we asked was that it be interpreted to allow us to perform the exit polling. That's it. We were rebuffed in 2004. Prior to the 2006 election, we again reached out to the Secretary of State and said, again, we're asking you to interpret it to allow us to perform these activities. The Secretary of State said no. The district court found that. Two opportunities to settle. Again, that wipes out any possible reliance on that Thorstead factor, because it was found by the district court that they had that chance. So I can go we've gone through the Thorstead factor quite a bit in our brief. I'm happy to address any of them here if Your Honor has a particular question on them. But I think we've analyzed it properly. But what we've got at the end of the day is a situation where in Sethi and in the Harrington case where we find this court's instruction that if you're going to deny fees, you've got to make findings of fact and conclusions of law. When that's expounded upon, what that means is that you've got to identify the circumstances and you've got to explain why they render the fee award unjust. It just wasn't done here. We don't know which of the Thorstead factors were relied on. Was it all seven? Was it five? Was it three? We don't know. The evidence I would submit makes it impossible to have reached those findings with the possible exception of good faith, which is not going to be enough in and of itself to deny a fee award. So thank you. The case is heard and will be submitted for decision. Thank you both for your arguments. We'll proceed to the next case on the oral argument calendar, which is Nichols v. Stanser. Thank you.
judges: Wallace, Thomas, Graber